## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CYNTHIA ARTIS, et al.,** ) | |
|    **For themselves and all others similarly** ) | |
|    **Situated** ) | |
| ) | |
|    **Plaintiffs,** ) | **Civil Action No.  01-cv- 0400 (EGS)** |
| **BEN S. BERNANKE,** ) | |
| **CHAIRMAN OF THE BOARD** ) | |
| **OF GOVERNORS OF THE** ) | |
| **FEDERAL RESERVE SYSTEM,** ) | |
| ) | |
|    **Defendant** ) | |

## MOTION FOR CLASS CERTIFICATION, AND FOR APPROPRIATE RELIEF ANCILLARY THERETO

**Preliminary Statement:**

Pursuant to the Court's Minute Order of July 8, 2013, plaintiffs hereby file their Motion for Class Certification of a class of aggrieved employees of the Board of Governors of the Federal Reserve System (defendant or the Board).  Plaintiffs Statement of Points and Authorities in support thereof, and all accompanying Exhibits, are hereby adopted in support of the class certification requirements of Federal Rule of Procedure 23.

Plaintiffs allege their allegations are supported by the documents accompanying this motion. Those documents, particularly plaintiffs' Discovery Sets I, II, and III, and the responses thereto from the Board support plaintiffs position that they requested a full measure of discovery in this complex case.  And they did that with no advance cooperation from defendant as required by the rules, particularly by a Federal Government Agency in a racial discrimination case of over 18 years standing.  Plaintiffs have engaged three groups of expert witnesses.  All have testified via declarations that the production of electronic information by the Board was both faulty and/or inadequate.

1

Defendant has withheld key data, totally blocking the readily available machine analysis required by the situation.  Yet, fortunately plaintiffs have very recently (2013) acquired documents, apparently by accidental production by defendant's counsel, which refute defendant's plea of both burdensomeness and withholding of the very information needed to prevail in this Motion for Class Certification.

Under these circumstances, based upon documents refuting defendant's argument failure to request that vital identifying data, which, if produced would readily provide the missing/withheld evidence supporting each of the prerequisite to class certification.  Accordingly, plaintiffs are entitled to an adverse inference of the truth of their burden of proof, for purposes of class certification, of the invidious pattern and practice they allege has been on-going for over 30 years.

Existing electronic database files are now known to exist in the electronic PeopleSoft database files of the Board (although not produced).  From this withheld evidence,  not only may the expected existence (or as not expected) the non-existence of across-the-board discrimination based upon race may be determined.  This determination may be routinely made, with little cost or burden by the Board itself.  Eminently practical is a 100% analysis of the existing data, now proven to exist, but withheld by defendant.  (See Exhibits 8, 9 and defendant's non-candid objections refuted by those Exhibits contained in Exhibit 6).

All of this missing evidence results from the Board's failure to furnish existing database records in good form, and the failure to ever discuss the meaning of its standard electronic data files.  Had this good faith practice been followed, plaintiffs' successful  approach to discovery, simple and straight forward was a foregone conclusion.  The identification and then tracing of similarly situated job hires by job code and employee identification number throughout their careers.  What could be

simpler?  The subsequent tracing of persons so identified by each persons' job code and  unique employee number (and/or social security number).

But the Board determined not to permit this easy analysis.  Accordingly, all such information enabling the routine analysis was stonewalled, by a variety of specious arguments.  This motion therefore, attempts to expose the failures to produce for what they are, attempts to avoid production of readily available highly relevant probative evidence.  The points and authorities with exhibits hereto further detail the support for this Motion and demonstrate the facts proving service upon the Board of all necessary data requests.

Defendants failed to produce existing data in a form required to trace and compare plaintiffs, the class, with white comparators who began their careers at about the same time as plaintiffs.  And when the white comparators were promoted, further data on those comparators was not produced. What was not produced could not be compared.  And the failure to produce history reports prevented analysis of the not produced data.  More importantly, identification of similarly situated hires, and their white comparators was not possible because job codes, the accurate and readily available means to identify and compare similarly situated persons were withheld, although they existed for the entire period of time.  Accordingly, identification and later analysis of those similarly situated persons was simply not possible, as explained below.

Accordingly, plaintiffs request that this Court deem those electronic evidentiary facts stated following which would result in class certification which are hereby proven by documents to exist, but which to date have not been produced in usable form by defendant, be taken as established by adverse inferences.  Those facts, shall be supported by evidence made available at trial, or before should such leave to subpoena those facts be granted by the court.  Subpoena power has been expanded and clarified  by Amended Federal Rule of Civil Procedure # 45, as amended effective on

December 1, 2013.  Those facts, and the after-acquired proof of existence thereof, are detailed in the accompanying statement of points and authorities.

Plaintiffs submit that class certification may proceed at this time on an interim definition basis, or alternatively await further definitions which are expected to be crystalized by on-going proceedings pursuant to the existing scheduling order.

1.                           **Certification of the Class:**

**Class Definition:**

The named Plaintiffs bring this case on behalf of all persons

Who were non-managerial African American and/or Native American Secretarial and/or clerical support persons employed at the defendant Board at any time from 1989 to the present (the Class Period) and; **or alternatively**, at any time during the "class period" as defined by reference to provisions of the Lilly Ledbetter Fair Pay Act of 2009, (as amended), with respect to each such class member;

Who, because of racial discrimination, have been denied advancement or promotions for which they were equally or better qualified than their white counterparts who were selected over them one or more times, and/or who received lessor advances in salary or bonuses or other benefit, including retirement, and/or who have been, continue to be, or may in the future suffered disparate treatment, or systemic or other adverse impact, or systemic adverse treatment because of their race, African American or Native American, and/or who were similarly situated within the definition of F.R.Civ. Rule 23 to one or more of the plaintiffs herein, who were damaged, injured, or otherwise adversely affected including effects upon emotional and physical health, by the Board's racially discriminatory policies and practices, or the use of race as a prohibited employment practice in decision making

resulting in an individual or group adverse employment practice, as complained of herein; and/or by virtue of an unfair and lessor amount of pay in at least one paycheck, and who suffered lessor, fringe benefits, including retirement annuities, based in any part upon that unfair and lesser pay.

Plaintiffs class action allegations, the plan for financing notification to putative class members, expected to number about 500, and including certification of the class are hereby stated as follows in accordance with local rule 23.1[1].

**Plaintiffs' LCvR 23.1, Statement as to Notice of Class Members Upon Certification**

Plaintiffs propose that Notice to putative class members would be by Board email or internal mail for those class members who still are employed at the Board, and for those who are no longer at the Board, by either or both, United States Mail or email.

1. All persons remaining employed at the Board would be notified on their work computers, or, in the event they had no computer, by official Board mail addressed to their offices. For members who are no longer at the Board, retired members would be located by inquiry of the government retirement roles. For members who have left the employ of the government, addresses would necessarily be obtained from the last known address at the defendant.

---

[1] **LCvR 23.1© PROVISIONS AS TO NOTICE**.
In an action maintained under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the plaintiff shall include in the motion for certification a statement proposing (1) how, when, by whom, and to whom the notice required by Rule 23(c)(2) shall be given, (2) how and by whom payment therefore is to be made, and (3) by whom the response to the notice is to be received. In lieu of such a statement the movant may state reasons why a determination of these matters cannot then be made, and offer a proposal as to when the determination should be made. In certifying a class action as maintainable under Rule 23(b)(3), the court may include in its order the provisions for notice pursuant to Rule 23(c)(2) or may postpone a determination of the matter.

2,  Since the number of putative class members is estimated at less than 1,000, the labor for notification would be furnished by the 16 plaintiffs, as would all research to update addresses using internet tools.  Plaintiffs would pay all costs of postage, internet expenses, stationary, supplies and other expenses.  This effort would begin immediately after:

(1) a determination of the persons "similarly situated" from the Board's records.

(2) a certification of the class by the Court.

2.              **The Prerequisites of Rule 23 Have Been Met**

Federal Rule of Civil Procedure (FRCP), Rule 23, requires four prerequisites be met for certification of a class for purposes of pursuing legal action, which are met in the instant case in that:

(1) The class is so numerous that joinder of all members is impracticable, as required by FRCP 23(a)(1); about 350 secretaries in all divisions of the Board are similarly situated with plaintiffs herein; about 300 clerical employees in all divisions of the Board are similarly situated with the plaintiffs herein, except for the labels attached to the positions they occupy.  Therefore the Rule 23 prerequisite of numerosity is met by this Complaint.

3.         **Pursuant to F.R.Civ.  P.  23(a)(2)** Common Questions of Law and Fact as Between Class Members, and as between Class Representatives and Class Members:

Questions of law or fact common to the class predominate over any questions affecting only individual members, as required by FRCP 23(a)(2); Those questions are contained to the extent now known in this Complaint.  Therefore this requirement of Rule 23 is met by this Complaint.  These questions are:

(1) Whether the Board's statutory and regulatory mandates were violated by Defendant's acts;

(2) Whether the Board maintained and implemented racially discriminatory policies and/or practices; if affirmative, whether those practices were intentional or merely systemic in nature.

(3) Whether the Board's racially discriminatory policies and/or practices caused a disparate impact and/or treatment of the members of the Class;

(4) Whether Defendant's employment policies and/or practices are arbitrary and designed to thwart the processing of valid EEO complaints;

(5) Whether the same guidelines or management practices created the universal pattern of bias observed and complained about, thereby creating a pervasive pattern and practice, or whether alternatively, the universal bias is merely coincidental and the result of innumerable unrelated discriminatory acts.

(6) Whether the Board's follows or violates regulatory rules, thereby creating the universal bias observed.

(7) Whether the Board's statistics confirm or refute plaintiffs allegations of a universally extant pattern of bias or not.


4.      **The Claims-- Pursuant to F.R.Civ.  P.  23(a) (3)--of Plaintiffs/Representatives Are Typical of the Claims of the Class:**

The sixteen named plaintiff/class representatives are from the various divisions at the Board. The complainants have obtained information by compilation of employee numbers in the five divisions in which they work or worked in the past.   The sixteen named complainants aver that, in their experience, which cumulatively amounts to two hundred and four person-years of observation at the Board (Table No.  1), as of the effective date of this complaint, their individual complaints are common and typical of the observed treatment of their fellow minority employees at the Board.

(1) The claim of the sixteen complainants, for themselves and each member of their Class, is that for over 15 years, on a continuing basis, for all matters involving ratings for promotions and ratings of work performance of the Class, the Board maintained and continues to maintain a practice of favoritism for advancement and promotion of white persons.

(2) The result of that practice, which has been observed by each of the complainants and to which each aver in fact exists, is as follows:

(3) Virtually all supervisors in all divisions during the time defined as the Class Period are or were, for the 30 years preceding this complaint, white.  Those white supervisors maintained as a pervasive pattern and practice of total control over the promotion process, thus, black and other racial minority secretaries were not advanced or received lower pay packages than their white counterparts.

(4) The claims of this illegal pervasive pattern and practice are common and typical for each complainant.  That number as stated above is more than 650 persons.  Only one token exception to the foregoing described pattern and practice has been noted by the sixteen complainants and that occurred long after the filing of the first formal administrative complaint.  These complaints do not include the custodial division, for which none of the complainants work and therefore have no personal knowledge.

5.    Accordingly, the claims or defenses of the representative parties are typical of the claims or defenses of the class, as required by FRCP 23(a)(3); therefore, this prerequisite of Rule 23 is met.

6.     The Several Requirements for Maintaining a Class Action Have Been Satisfied.

(1) Under FRCP 23(b), the types of class actions are specified and required to be satisfied.

(2) Under FRCP 23(b)(1)(A), the claims of all the individual members allege a common claim of law and fact in alleging a  flawed EEO system and standards of conduct in the Board that have deprived them of their rights under Title VII; and;

(3) The prosecution of separate actions by individual members of the class would create the risk of inconsistent adjudications which establish incompatible standards of conduct for the Board; and;

(4) Under FRCP 23(b)(1)(B), adjudications with respect to individual matters would, as a practical matter, be dispositive of or impair the interests of parties not party to the adjudications, because such adjudications may be *res judicata* with respect to the issue of the Board's pattern and practice of administering EEO complaints.

(5) Under FRCP 23(b)(2), the Board has acted and refused to act on grounds generally applicable to the Class.  The Defendant has, for many years, ignored the facts alleged by the complainants.  Defendant has refused to discuss and produced non-responsive data omitting information which would allow tracing of comparative earnings of white and black employees over their careers.  The data is known to contain non-compatible formats and duplications.  These statistics, in the Board's possession, confirmed by hundreds of man years of observation, and upon information and belief, the existence of thousands of personnel transactions confirming that observation, will verify the discriminatory patterns and practices of which complainants aver.  This pattern and practice is contrary to Title VII.  Therefore, injunctive relief and/or corresponding declaratory relief for the Class is now appropriate and necessary to eliminate the discrimination continuing in violation of federal law.

(6) As required by FRCP 23(b)(3), a class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy.  The questions of law or fact in this case predominate over any questions affecting individual members.

(7)  Common dispositive issues of law and fact relate to the Board's general administration of its EEO system, and, as stated under Rule 23, Section (b)(i), maintenance of individual actions would be impracticable and utterly impossible financially for plaintiffs and the putative class to maintain (as individuals).  In addition, the interests of the individual members of the Class will be adequately protected by the Plaintiffs, as discussed above..

7.      Adjudication of the class claims was initially initiated by the EEOC, without success in inducing remedial actions by defendant.  (Case No. 1:96 CV 02105, EEOC Case No. 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X, FRB Case NO. FRB-EEO-95-03-001, filed in USDC on September 11, 1996; Case No. 1:96 CV 02105, EEOC Case No. 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X, FRB Case NO. FRB-EEO-95-03-001, filed with the Board on February 28, 1997; EEOC Case No. FRB-EEO-97-03-002), so that one administrative judge has already recognized that a continuation of a class action is more efficient than forcing individual claimants into individual lawsuits.

8.      As a practical matter, given the lapse of time, a class action based upon the Board's evidence of class membership, earnings and bias is the only workable means to relief for the wrongs and unlawful acts described herein.

9.      For all of the foregoing reasons, this case should be approved for certification as a class action and processed as such to completion by the United States District Court to obtain the relief for each of the complainants and the class they seek to represent.

**Conclusion**

Accordingly, the Motion for Class Certification should be granted, and a hearing set for arguments on the timing of the remainder of the case.   The claims of Crystal Clay, should be dismissed without prejudice to renew those claims for good cause shown, without prejudice to her participation as a class member.


**Respectfully submitted,**

**CharltonW 2428**

**Walter T.  Charlton, D.C. Bar # 186940**
**Counsel for Plaintiffs and the Putative Class**
**11213 Angus Way, Woodsboro, Md 21798**
**Telephone 410 571 8764**
**Email, charltonwt@comcast.net**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CYNTHIA ARTIS, et al.,** | ) |
|     **For themselves and all others similarly** | ) |
|     **Situated** | ) |
| | ) |
|     **Plaintiffs,** | )   **Civil Action No.  01-cv- 0400 (EGS)** |
| **BEN S. BERNANKE,** | ) |
| **CHAIRMAN OF THE BOARD** | ) |
| **OF GOVERNORS OF THE** | ) |
| **FEDERAL RESERVE SYSTEM,** | ) |
| | ) |
|     **Defendant** | ) |

**PLAINTIFFS' POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION, AND FOR APPROPRIATE RELIEF
ANCILLARY THERETO**

---

## I.  INTRODUCTION AND PRELIMINARY MATTERS

This pattern and practice class action was brought by 19 aggrieved female African American and Native American plaintiffs employees of the Board of Governors of the Federal Reserve System (the Board or defendant).  Their class administrative actions were begun in approximately 1995.  Attrition has since reduced the number of named plaintiffs class representatives to 14.

**Dismissal of Claims of Crystal Clay, Without Prejudice:**

The latest casualty of the elapsed time for completion of this case (over 18 years), is Crystal Clay, who has dropped from sight.  Accordingly, she has not had her individual deposition taken as ordered by the District Court.  At the demand of defendant, (Exhibit A) plaintiffs hereby move, via this filing, to dismiss her complaint.  Undersigned counsel has attempted on numerous occasions to contact Ms.  Clay.  Because the reasons for hers failure to respond remain unknown, plaintiffs request that the dismissal be without prejudice enabling her to renew her claims for good cause shown during the pendency of this case.

1

To the extent that new matters or issues are raised in this Motion to Certify the Class, such issues were attempted to be discussed with defendant on December 30, 2012 in order to satisfy the requirements of LCvR 7(m).  Defendant's response to that request is contained as **Exhibit A** to this Motion.

**Exhibit B** to this Motion is a copy of plaintiffs "live" Fourth Amended Complaint, filed on August 24, 2012 (Docket # 127) pursuant to Order of Court granting leave to do so.  The Court's attention is respectfully directed to paragraphs there in which state, pursuant to local rule 23.1 the requirements for a class action alleged therein.

## II.  STATEMENT OF FACTS SUPPORTING CLASS CERTIFICATION

**THE PRISM OF A RECURRENT OCCURRENCE: THIS CASE IS BROUGHT AS A PATTERN CONFORMED TO CONTAINED IN THE BODY OF**

**This Case Is Brought Against a Federal Agency as a Pattern and Practice Racial Discrimination Class Action:**

Plaintiffs' identification of the basic nature of this case as a pattern and practice action, and thereby being subject to the same procedures as the line of cases beginning with ***Teamsters v United States***[2], has not been questioned by either the defendant or the Court.  However, the failure of defendant and the Court to consider the special procedures applicable to a pattern and practice case has resulted is severe procedural problems.  Those problems, centered upon the scheduling of class certification discovery *before the pattern and practices are proven* have prevented plaintiffs from acquiring readily available evidence of the discriminatory pattern they allege.

In addition to this order of proof problem, the District Court has, through denial of plaintiffs motion to compel on grounds that the information sought was not properly requested, are, plaintiffs allege, plainly erroneous factual determinations.  Those factual determinations are *both* a part of the

---

[2]   ***Teamsters v. United States***, 431 U.S. 324 at 336-38, 358-60 14 FEP 1514, at 1528-30 (1977)

"first order of business" in a pattern and practice case, preceding class discovery, and; probative substantive facts.  All facts in this case are subject to plaintiffs jury demand (See Exhibit 2, Page 21. # 95).  Those actions by the District Court, which amount to factual determinations, or are based upon the purported credibility of any party are hereby *Objected* to as violations of plaintiffs procedural due process and jury demand rights.

Plaintiffs hereby renew their requests for reconsideration of these key factual decisions of the Court by which they have been deprived of access to determinative probative evidence on the subject of this Motion, Class Certification by the denial of plaintiffs motions to compel and for reconsideration.

Here, contrary to ***Teamsters***, the United States is not the prosecutor/plaintiff, but rather the defendant.  In such cases, proof of the pattern and practice is supposed to be the first order of business, preceding class discovery.  But here, because the government is the defendant not the plaintiff, that order of events did not occur.

As a consequence, and also because of the factual determinations stated above, plaintiffs allege that during discovery, the Board has withheld readily available relevant and material evidence. It is an actual fact, upon which the Court erred in reliance upon the pleadings of the Board, that the necessary evidence was duly and timely requested.  (See Attachments 1-3, plaintiffs requests, and Attachments 4-6, defendants responses thereto).  See also Attachment 15, excerpted specific requests for electronic production included in plaintiffs discovery.  Wherein (1) Job Codes, an essential element of all of plaintiffs theory of proof, (2) Job Histories, i.e. all transactions for every relevant persons, and (3) the historical data on all white comparators, originally similarly situated, were in fact requested but not produced by defendant.

3

This case was managed, in Scheduling Orders and strict Confidentiality Orders proposed by defendant Board, and accepted by the Court over plaintiffs objections.  Factual determinations made by the Court, ignored the basic premise of the order of proof for pattern and practices as complained of herein, has resulted in a "placing of the cart before the horse" situation in all discovery matters.

As another example, by the provisions of the Confidentiality Order (as amplified by admonitions by the Board's counsel) all data pertaining to any individual employee, except the individual plaintiffs pertaining to themselves, was marked and deemed confidential.  That Order, meant that counsel for each of the plaintiffs was prohibited from discussing with each plaintiff, even his own client, any part of the information contained in the partial electronic data actually produced. And this bar pertained not only to individual data of each comparator, but even summations, or statistical opinions based upon such data.

Thereby, the pattern and practices complained about were not available for conferences or discussions between counsel and each plaintiff who was the charging party.  This  proscription of information absolutely precluded any plaintiff becoming knowledgeable as to the very pattern she was complaining about.  In this environment, nevertheless, upon the Court's Order after granting sanctions for costs, the individual plaintiffs 18 year old recollections proved to be of little value.

Nevertheless, a great deal was learned from two of the Exhibits furnished to two deponents, by the Board.  Those two exhibits were Mrs.  Sharon Ellis's Plaintiffs Exhibit # 1, and Mrs. Kathleen Matthews Exhibit # 4.  From a combination if these two sets of information, it is crystal clear that the Board had been withholding evidence, although the Board still denies that fact, preferring to argue disingenuously, that "the plaintiffs never asked for that material" and "burdensomeness".  Both of these defenses are not true.

4

In addition, although there is included from day one each relevant employee's electronic record, a job code, that information, and the actual code for the first 9 years was withheld. That withholding disenabled the otherwise routine task of identifying members of the class of similarly situated persons. Through these obstructionist efforts, plaintiffs efforts to meet the requirements of proof of the numerosity, commonality, and typicality elements for class certification under rule 23 were totally frustrated. Absent these actions by defendant, meeting the requirements for class certification would have been a relatively trivial task.

In addition, incontrovertible documentary evidence proving the above allegations was acquired, but only after the discovery deadline for class certification discovery had passed. And the actual data needed, has not yet been produced. That same data is necessary to calculate the damages attributable to the onerous practices. Accordingly, if class certification is granted, in phase II, the same date needed to prove damages may be used to recoup the failures during the class certification phase of this case.

### III.  Plaintiffs' Expert Witnesses as to Class Certification:

**Richard K.  Hampson, Data Processing Expert:**

Plaintiffs have retained three expert witnesses to interpret the technical facts of this case. The first expert retained is Richard K.  Hampson, a long-term data processing professional who has substantial experience in working with Federal Agencies. Mr. Hampson received information from plaintiffs counsel and data forwarded to him from the Board, through plaintiffs counsel.

Mr.  Hampson has been deposed twice and has rendered one report, in an original version, with data charts, and in an updated version. The initial deposition of Mr.  Hampson, disclosed several mechanical errors resulting from the hand processing. The updated report with corrections

shows, from the data available, higher pay for white persons than black persons hired the same year, in similar positions (Exhibit C).

The second report (Exhibit D) was (1) a response to Dr.  Bakers critique of Hampson's report, during which he defended his findings as the best which could be done with inadequate data. He also in part III of that report opined as to the impractality of analysis using hand methodology as the inadequate state of the electronic data required.

Both reports were prepared basically by hand, since machine processing on faulty data proved unworkable.  Mr.  Hampson described his opinion as not a statistical study, but a summarization of the best data available.  That data, after extensive cross-examination, remains intact.  The white persons sampled earned more in similar jobs, than the 11 plaintiffs used as the base line for comparison.

**Arthur J..  Kendall,, Ph.D. Statistical and Data Expert**:

Dr.  Kendall's opinions as summarized is that the data furnished is not usable.  Dr.  Kendall was retained to do detailed analysis using electronic programming and statistical techniques, in which he is an international expert.  Dr.  Kendall's opinions are contained in Exhibit E, followed by his Vita.

**James M.  Ballard, Ph.D.**

Dr.  Ballard is a clinical psychologist who was retained to examine the plaintiffs for physical and emotional damages which may have resulted from the stress and harm resulting from the Board's discrimination in the workplace.  Dr.  Ballard's opinion is contained at Exhibit F.  Although preliminary examinations were performed, lacking factual data on each plaintiff, Dr.  Ballard was unable to render an opinion.

### IV.  ARGUMENT

### A.  A PATTERN AND PRACTICE OF EMPLOYMENT DISCRIMINATION
### BASED UPON RACE EXISTS; AND IS OF THE ESSENCE OF THIS CLASS ACTION:

Plaintiffs pattern and practice claims allege that this agency of the federal government has

for more than 30 years favored white competitors for ratings, promotions and advancements by

lateral transfers to more lucrative tracks of employment.  Those competitors (comparators, persons

to whom an "apples to apples" comparison should be made) were allegedly equally or lesser

qualified for the advancement action than plaintiffs and the putative class.  But again, the data on

those persons was not included in the data produced although requested in plaintiffs set III (Exhibit

3, defendant's response Exhibit 6).  The discriminatory actions took many forms, including earlier

selection of preferred races, and an admitted policy of "career transitions"[3] by which any

complaining employee were given disproportionate incentives, to leave employment at the Board,

rather than file formal complaints.

During the extensive administrative processing of this case, plaintiffs, first acting pro se, and

later, after retaining undersigned counsel, repeatedly requested information and data which would

either confirm or refute their massive allegations of disparate and unfair treatment.  Consistently, the

Board has refused to produce the definitive evidence which would prove the allegations of their

complaints which are summarized in this motion.  However, the District Court, up until and

including this date, has consistently refused to enforce meaningful disclosure of the actually existing,

and readily  available key discriminatory evidence.  Further, the paltry data actually produced,

---

[3]  At a status call, Senior Counsel for the Board, John Kuray, Esq.  admitted that the
Board maintains a policy of "career transition".  That term means paying employees bringing a
grievance a negotiated amount of leave without pay or other benefits in exchange for not showing
up at work in the future.  This policy is, plaintiffs allege, merely one more instance of the Board's
maintaining a discriminatory workplace, not in accord with federal worker EEOC regulations
applicable to the rest of the federal Executive Branch workforce.

whether individual comparisons of whites versus blacks on a year by year basis to each plaintiff, and/or class members, or any summaries thereof, have been blocked for disclosure to the plaintiffs.

It is now known that a virtual mountain of corroborative evidence, alleged to overwhelmingly demonstrate the pattern and practices alleged, is readily available. But that information, representing electronic probative evidence, has been withheld. All such information referenced herein was requested during the time set for class certification discovery.

Plaintiffs, through counsel are aware that the Court has ruled that plaintiffs did not properly request and serve such requests upon defendant. However, that factual conclusion of alleged failure to request relevant data is plainly erroneous. (Compare Sets I, II, and III of plaintiffs electronic discovery materials along with responses thereto indicating actual delivery. (Exhibits 1 through 6). Under DC law, and local rules, actual service upon defendant's counsel, and response thereto, represents valid service. Moreover, by responding, even if no valid service had occurred, the response thereto waives that requirement. Plaintiffs position is that this excuse is simply factually untrue.

Accordingly, the information withheld representing the job codes and related descriptions, whereby each similarly situated employee and comparator is readily identifiable, but withheld utterly blocked meaningful discovery of probative evidence. Also, the entire employment history, ratings, earnings, and employment attributes of each and every employee of the Board. By this evidence, withheld intentionally, but with the concurrence of the Court, each plaintiff, and each putative class member was denied the very evidence supporting her claims.

This factual allegation is a matter which is the essence of this case and which, because of the Jury Demand contained in plaintiffs complaint (See paragraph # 95, page 21, Fourth Amended Complaint) a matter for jury determination, not the Court. The Court, apparently overlooked this

aspect of plaintiffs claims, predicated, as a matter of the initial determination, if the pattern and practices alleged pursuant to the Teamsters theory of this case, was applicable or not.

Accordingly, if it is determined as a factual matter, subject to the Jury Demand, that the employee data which now is known to exist does in fact support plaintiffs allegations in any material part, it must follow, that the Board has intentionally withheld such data, and misrepresented such false non-existence, for the entire term of this case.  In that expected event, summary judgment, or at least partial summary judgment would be required.  That expected course of action would require the relief to be granted thereby obviating all of the sticky problems in litigation against the offending federal agency.

Although requested, and being readily available, such key evidence has not been produced in usable form.  Nor has the Board been required to explain the details of meaning and usage of its modern powerful human resources employment database management system.  Neither contents, earnings or positions have been produced, nor has the Board cooperated in good faith, in the production of such information as required by the Rules of Court.  This condition has continued for the entire 18 years these cases have been proceeding through the Court system.

And all of this time such proof (or refutation is such it be) of plaintiffs allegations have been available-in good form- to demonstrate, not by some obtuse statistical inference, but by a 100% complete data processing analysis of the actual data, the patterns alleged, at the push of a button. Mere summarization of all plaintiffs and class members and comparisons with whites similarly situated at hire date, is expected to show completely different "normal paths" of advancement over the term of employment by the two comparative groups.

**B.  A CLASS SHOULD BE CERTIFIED:**

In this situation with the facts yet to be determined by a jury, and with the unvarnished truth is:  (1) that the Board has withheld duly and timely requested electronic data, and (2) that after-acquired evidence strongly indicates that the Board intentionally withheld probative evidence to which the plaintiffs are entitled; and finally, (3) there is, even lacking sufficient data strongly supporting a pattern and practice of discriminatory conduct.

Where data has been withheld, the Court should find an adverse inference against the Board that the data alleged to exist, if furnished would support class certification.

Accordingly the Motion should be granted and this case proceed to phase II.

**C.  Plaintiffs Theory of the Case Is Correct and Based Upon Sound Evidence
  Which Was Requested and Actually Exists (Exhibits 8, 9, and 15).**

Plaintiffs pattern and practice case, if at trial produces the evidence pursuant to the new Rules governing subpoenas pursuant to amended Rule 45 will support all of plaintiffs claims of the existence of the actual discriminatory practices.

## CONCLUSION

**Accordingly, the class should be certified.  A draft Order accomplishing this objective is enclosed.**

**Respectfully submitted,**

**CharltonW 2428**

**Walter T.  Charlton, D.C. Bar # 186940
Counsel for Plaintiffs and the Putative Class
11213 Angus Way, Woodsboro, Md 21798
Telephone 410 571 8764
Email, charltonwt@comcast.net**

10

**Certificate of Service**

I hereby certify that I filed, in the ECF system of the United States District Court for Washington, D.C. this Motion to Certify the Class, along with the Evidentiary Attachments thereto, on the third day of January, 2014 with the expectation that Copies would be sent by automatic service to:

 Kenneth M.  Willner, Esq.
Paul Hastings
815 15th, Street, NW
Washington, D.C. 20005

John L. Kuray, Esquire
Office of the General Counsel
Board of Governors of the
        Federal Reserve System
20th, & C Streets, N.W.
Washington, D.C. 20551                              /s/ charltonw 2428
                                                    _____
                                                    Walter T. Charlton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| CYNTHIA ARTIS, et al.,             ) | |
|     For themselves and all others similarly   ) | |
|     Situated            ) | |
|             ) | |
|     Plaintiffs,            ) | Civil Action No.  01-cv- 0400 (EGS) |

CYNTHIA ARTIS, et al.,                    )

    For themselves and all others similarly    )
    Situated                              )
                                         )
    Plaintiffs,                          )  Civil Action No.  01-cv- 0400 (EGS)
BEN S. BERNANKE,                          )
CHAIRMAN OF THE BOARD                     )
OF GOVERNORS OF THE                       )
FEDERAL RESERVE SYSTEM,                   )
                                         )
    Defendant                            )

---

**Index of Exhibits and Attachments**

**Exhibit A-**     **Rule 7(m) Response by Defendant January 2, 2014.**

**Exhibit B-**     **Fourth Amended Class Complaint, August 24, 2012.**

**Exhibit C-**     **Richard K.  Hampson, Information Technology Report 1, Updated**

**Exhibit D-**     **Richard K.  Hampson, Report 2, Report on Dr.  Bakers' Evaluation of Hampson Findings, Work Experience, Vita**

**Exhibit E-**      **Arthur Kendall, Ph.D. Data Opinions, and Vita**

**Exhibit F-**     **James M.  Ballard, PhD psychological opinions (not possible) lacking data.**

**Numbered**
**Exhibits:**

**1. Plaintiffs' Electronic Data Discovery, Set I**

**2. Plaintiffs' Electronic Data Discovery, Set II**

**3. Plaintiffs' Electronic Data Discovery, Set III**

**4. Defendant's Responses to Set I**

**5. Defendant's Responses to Set II**

**6. Defendant's Responses to Set III**

**7. Declaration of Kathleen Matthews, May 2013.**

8.  **Exhibit Demonstrating Job Codes Existed in Board's electronic records at inception of case, 1989, Matthews Def Deposition Exhibit # 4.**

9.  **Exhibit Demonstrating that Electronic History for each employee, standard report is readily available for entire relevant period.**

15.  **Excerpts, demonstrating that Job Codes repeatedly requested from Board. Highlighted in Red.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CYNTHIA ARTIS, et al.,** | ) |
| **For themselves and all others similarly** | ) |
| **Situated** | ) |
| | ) |
| **Plaintiffs,** | ) **Civil Action No.  01-cv- 0400 (EGS)** |
| **BEN S. BERNANKE,** | ) |
| **CHAIRMAN OF THE BOARD** | ) |
| **OF GOVERNORS OF THE** | ) |
| **FEDERAL RESERVE SYSTEM,** | ) |
| | ) |
| **Defendant** | ) |

**Proposed Order**

Upon careful consideration of the requirement for a rigorous examination of the facts alleged herein, including those alleged in Plaintiffs' Fourth Amended Complaint, the Exhibits and Attachments to Plaintiffs Motion for Class Certification, the disputed statements of fact pertaining to discovery requests and materials furnished, and particularly, plaintiffs' averred position that a pattern and practice of employment discrimination has existed for an extended period of time at the place of business of the Board of Governors of the Federal Reserve System;

1. and it further appearing that the Plaintiffs herein have made, timely and in good form, a demand for a trial by jury of all matters of material fact, appearing in item # 95, page 21 of their Fourth Amended Complaint;

2. and it further appearing that there are disputed material facts pertaining to both the pattern and practices complained about herein, and matters at least potentially relevant to class certification issues, now therefore, it is HEREBY ORDERED;

3. That plaintiffs motion for class certification is granted;

4. That the parties shall proceed to Phase II of discovery in this case;

1

5.  That discovery of the damages phase of this case shall be without limit to production of electronic data and information whether described as interrogatories, document production, or production of electronic data;

6.  That up to 15 additional depositions per side may be taken.

7.  The Board of Governors shall, and is hereby Ordered, to cooperate to the fullest extent of its ability, to respond fully and completely, with adequate explanations from all Human Resources Personnel, Data Processing and Information Technology Personnel, with all systems and reporting forms and procedures available to furnish requested information relevant to any issue in Phase I or Phase II of this case;

8.  The parties shall take due care to avoid burdensome situations, as contemplated in the latest version of the Federal Rules of Civil Procedure, rule 26 et seq;

7.this phase, phase II shall begin February 1, 2014 and end on July 31, 2014.

8.Upon the conclusion of phase II, a Trial or other evidentiary hearing will be held upon all factual issues relevant to any phase or material matter in this case.

9.  The claims of Ms. Crystal Clay, as an individual plaintiff and class representative are dismissed, without prejudice to renewal for good cause shown, and without prejudice to any class claims.


SO ORDERED:


_____
Judge Emmet G. Sullivan,
United States District Court